**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRENDA JOYCE FORTES, | : | |
| | : | Civil Action No. 12-6063 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOYERTOWN AREA SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, the Boyertown Area School District (hereinafter "Defendant" or "School District"), by and through its counsel, the LEVIN LEGAL GROUP, P.C., hereby submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).

**TABLE OF CONTENTS**

INTRODUCTION AND PROCEDURAL HISTORY..................................................................... 2

FACTUAL BACKGROUND ....................................................................................................... 3

LEGAL STANDARD................................................................................................................... 9

ARGUMENT.............................................................................................................................. 10

    I.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO
        F.R.C.P. 12(b)(5) BECAUSE SHE FAILED TO SERVE THE COMPLAINT
        UPON DEFENDANT IN VIOLATION OF F.R.C.P. 4(c)(1). ........................................ 10

    II.  PLAINTIFF'S COMPLAINT MUST BE DISMISSED WITH PREJUDICE
        BECAUSE SHE FILED IT OUTSIDE OF THE TIME ALLOWED BY
        THE STATUTE OF LIMITATIONS. .......................................................................... 12

    III. PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE
        REMEDIES WITH RESPECT TO FIVE OF HER CLAIMS,
        WHICH MUST BE DISMISSED WITH PREJUDICE. .................................................. 17

1

IV. PLAINTIFF'S CLAIM FOR DEFAMATION MUST BE DISMISSED
WITH PREJUDICE BECAUSE IT IS PRECLUDED BY THE POLITICAL
SUBDIVISION TORT CLAIMS ACT. ........................................................................ 21

CONCLUSION.................................................................................................................. 22

## INTRODUCTION AND PROCEDURAL HISTORY

Currently pending before the Court for disposition is Defendant's Motion to Dismiss Plaintiff's Complaint. The Motion to Dismiss was filed pursuant to F.R.C.P. 12(b)(5) on the basis that Plaintiff has failed to serve a Complaint on the School District, as well as pursuant F.R.C.P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted. The Complaint was filed with the Court on November 13, 2012. Plaintiff served Defendant with a Summons, but not the Complaint, on January 30, 2013.

By way of brief procedural history, Plaintiff, proceeding *pro se*, filed an Application To Proceed In District Court Without Prepaying Fees or Costs (long form), commonly referred to as an *in forma pauperis* application (hereinafter "IFP"), on October 18, 2012. Attached to Plaintiff's IFP application was a U.S. District Court for the Eastern District of Pennsylvania Designation Form and a Case Management Track Designation Form. The entirety of Plaintiff's October 18, 2012, filing, which is actually dated October 12, 2012, is Docket Entry No. 1. The Court denied Plaintiff's IFP application by Order dated October 26, 2012, and provided Plaintiff with thirty (30) days to pay the filing fee.

On November 13, 2012, Plaintiff filed a Complaint (with the requisite filing fee) and a Request For Appointment of Attorney. Those documents are, respectively, Docket Entry No. 2 (hereinafter "Compl.") and Docket Entry No. 3. Like Plaintiff's IFP application, these two documents are dated October 12, 2012. According to the Court's online docket, the Clerk issued and forwarded to Plaintiff a Summons dated January 17, 2013, which, as noted *supra*, was

2

served on Defendant on January 30, 2013.   Attached hereto as "Exhibit A" is a copy of everything that was served on January 30, 2013.  It includes a Summons in a Civil Action signed by the Clerk; a Notice of Right to Consent to Exercise of Jurisdiction by a United States Magistrate; and a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge with no caption, except for a Civil Action No. handwritten at the top.

In her Complaint, Plaintiff appears to be asserting the following claims: discrimination in employment on the basis of race and color pursuant to Title VII of the Civil Rights Action of 1964 (hereinafter "Title VII"), 42 U.S.C. §§ 2000e *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con Stat. §§ 951 *et seq.*; discrimination in employment on the basis of gender pursuant to Title VII; discrimination in employment on the basis of sex pursuant to the PHRA; discrimination on the basis of an alleged disability pursuant to the Americans With Disabilities Act (hereinafter "ADA"), 42 U.S.C. §§ 12112 *et seq.*, and the PHRA;  and age discrimination pursuant to the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. §§ 621 *et seq.* and the PHRA.  Although unclear, she also appears to be asserting a claim for defamation.   Defendant's February 20, 2013, Motion to Dismiss follows service of the Summons only.

## FACTUAL BACKGROUND

Plaintiff Brenda Joyce Fortes (hereinafter "Plaintiff" or "Fortes") has been employed with the School District as a teacher since Fall 1993 (*see* Compl., p. 15, ¶ 4) and, during the time period that is the subject of her Complaint, worked at the School District's High School (*see* Compl., p. 8, ¶ 5).  She is African-American (Compl., p. 8, ¶ 9), claims to be disabled as a result of "Post-Concussive Syndrome" (Compl., p. 10, ¶ 33), and makes the following averments in her November 13, 2012, Complaint:

Fortes received a partial unsatisfactory job performance rating in June 2010 and, in August 2010 (which would be after the School District's summer break), was placed on a Professional Improvement Plan. (Compl., p. 8, ¶¶ 5, 7).    In addition to addressing her unsatisfactory job performance, Fortes states that the improvement plan was also "due to allegations" of her having a "long history of inappropriate comments." (Compl., p. 8, ¶ 5). Fortes does contest her unsatisfactory job performance rating or the subsequent improvement plan.   Rather, she alleges that, beginning September 2010, she was subjected to "harassing actions." (*See* Compl., p. 3, ¶ B; p. 8, ¶ 10; p. 11, ¶ 38).

With respect to her allegation that she was discriminated against on the basis of race, Fortes avers that in September 2010, after she was placed on the improvement plan, High School Principal Brett Cooper and Assistant Superintendent Robert Scoboria told her that she needed to "discontinue her communication" with the parents of her students. (Compl., p. 8, ¶ 12). Fortes then asserts that she was subject to "repeated criticism" regarding her job performance, and her interactions with her students and their parents. (Compl., p. 8, ¶ 11). This assertion, however, is incongruent with the specific allegations that follow. Nowhere in her Complaint does Fortes describe or reference any purported criticism(s) of her by any School District employee or official. Rather, she avers three incidents involving students. (*See* Compl., p. 9, ¶¶ 13-20).

The first incident Fortes alleges took place on October 7, 2010, when she "intercepted" a note being passed between two students, making it reasonable to imply that the students did not intend for Fortes to read their note. (Compl., p. 9, ¶ 13). Upon reading the note, Fortes asserts that the two students referred to her as a "damn nigger." (*Id.*) The second incident allegedly takes place on October 28, 2010, when Fortes claims to have been "assaulted" by a student throwing a marker at her "with great force," allegedly hitting her in the head and causing her to

be "off balance" and have "difficulty seeing." (Compl., p. 9, ¶¶ 15-16).  The last alleged incident takes place the next day, on October 29, 2010, with the same student who supposedly threw the marker.  (Compl., p. 9, ¶¶ 18-19).  Fortes claims that the student yelled at her "fuck you bitch" after asking Fortes if she planned to press charges against him, and Fortes responded: "Yes, most certainly."  (*Id.*)

It is noteworthy that Fortes' actual complaint against the School District is that she disagreed with the level of discipline that the School District imposed on the three students referenced in the aforementioned incidents.  She states her belief that the two students caught passing the note with the racial slur received "a couple of in-school days of suspension." (Compl., p. 9, ¶ 14).  She then states that the student who allegedly threw the marker at her and used profanity was removed from her classroom and received a one day in-school suspension. (Compl., p. 9, ¶¶ 17, 20).  There is no assertion or implication that the second and third incidents reference or are in any way related to race (or her alleged disability).  There are no averments suggesting how School District's disciplinary response was inappropriate, and the Complaint is completely devoid of any alleged improper conduct by any School District employee.  Fortes simply states her opinion that the School District's disciplinary response was an "utter failure to respond" (Compl., p. 12, ¶ 49) and jumps to the bizarre conclusion that this supposed "failure to respond" constitutes the School District encouraging students to "treat [her] with disrespect due to [her] race and disability" so that she will retire or resign from employment.  (Compl., p. 12, ¶¶ 48-49).  Additionally, Fortes avers that she was being "censored" due to her race and alleged disability by not being able to communicate with parents about the alleged student misconduct (even though she was on an improvement plan for, in part, inappropriate comments at the time). (Compl., p. 12, ¶ 49).

5

The remaining allegations in Fortes' Complaint consist of conclusory statements with no factual averments in support. Fortes states that she "made other complaints about aggressive students in [her] classroom; however no action" was taken by the School District in response. (Compl., p. 9, ¶ 21). She also claims that she called security for assistance, but that "many times" her calls went unanswered or she had to call multiple times. (Compl., p. 9, ¶ 21). Other than including the details of catching two students passing a note containing a racial slur on October 7, 2010, and describing how a student threw a marker on October 28, 2010, and used profanity on October 29, 2010, there is no other information about any "aggressive students" having to be removed from her classroom or any calls for assistance that went unanswered.

Without explanation, Fortes asserts that she experienced "severe" harassment because she was subjected to racial slurs from aggressive students. (Compl., p. 10, ¶ 27). She does not identify a single racial slur that she was supposedly subjected to or that was supposedly directly at her. She also does not state who allegedly subjected her to these unidentified racial slurs. This last point is particularly noteworthy because Fortes describes how the School District took action to discipline students involved in the incidents she actually identified. Similarly, Fortes sets forth no facts with respect to her statement that the alleged harassment was "pervasive." (Compl., p. 10, ¶ 28). She would have the Court believe that, for a year, she experienced "some type of different and/or harassing action" on the basis of race each day, but only includes information on three incidents – two of which had nothing to do with race and one of which involved a note between two students. (Compl., p. 10, ¶ 28).

In December 2010, Fortes states that the School District presented her with a "Transition and Separation and Release Agreement" that requested that she "resign, release all claims, and receive a private settlement." (Compl., p. 9, ¶ 23). Expressing a desire to continue working,

Fortes declined to enter into such an agreement. (Compl., p. 9, ¶¶ 23-24). However, as she goes on to imply that the School District did something improper, her various assertions become logically irreconcilable. On the one hand, Fortes is claiming that she was in a classroom with aggressive students directing racial slurs toward her on a daily basis, causing her to continually call for assistance. On the other hand, Fortes attempts to imply that the School District did something wrong because they offered her a separation agreement, which she now refers to as a "settlement agreement," and states that she "never requested any type of settlement." (Compl., p. 9, ¶¶ 23-25). Fortes goes further by next averring that she is one of two African American employees a the School District (Compl., p. 9, ¶ 25) and, without setting forth a single fact in support, asserts that "Race White teachers are treated more favorably, as they are not subjected to racial slurs or restrictions or censorship…or presented with a separation of [sic] employment agreement." (Compl., p. 10, ¶ 26). The only conduct that Fortes alleges in her entire Complaint that has anything to do with race – black or white – is that she read a racial slur in a note being passed back and forth between two students.

Regarding her allegations that she was discriminated against on the basis of an alleged disability, Fortes merely restates that same information as she averred in support of her race discrimination claim. However, she asserts that the School District is aware of her disability and states her belief that she can perform her job duties with reasonable accommodations. (Compl., p. 11, ¶¶ 36-37). Nowhere does she aver that she has been denied and/or is not receiving reasonable accommodations. And nowhere does she aver that anyone made any statements to her and/or about her alleged disability. In fact, the only mentions of Fortes' alleged disability is where she makes more conclusory statements, unsupported by any factual averments, that

"aggressive students are encouraged to treat her with disrespect" on basis of disability and "[t]eachers without a known disability are treated more favorably." (Compl., p. 12, ¶¶ 49-50).

Although she does not include a claim asserting retaliation in her federal complaint, the PHRC complaint attached thereto makes an allegation of retaliation but does not state on what basis. Specifically, even though she previously asserted that she had aggressive students in her classroom but wished to continue working, Fortes asserts that the School District harassed her by moving her to new Library Coordinator position. (Compl., p. 10, ¶ 29). Fortes implies, but not actually explain why, this is harassment or why being moved to a new position under the circumstances she describes is in any way related to her race or alleged disability. (Compl., p. 10, ¶¶ 27, 29). Although it initially appears that Fortes was going to claim that the January 2011 change in position was retaliatory because she had filed previously filed EEOC and PHRC complaints against the School District in 1995, 2004 and 2006 (*see* Compl., p. 13, ¶¶ 56-57), she actually alleges that she was retaliated against for declining to sign a "Separation and Release Agreement" and for disagreeing with the School District over student disciplinary matters. (Compl.., p. 13, ¶¶ 64-65).

Fortes dual-filed allegations with the Pennsylvania Human Relations Commission (hereinafter "PHRC") and the Equal Employment Opportunity Commission (hereinafter "EEOC") on March 18, 2011, claiming that the School District began "harassing actions" towards her in September 2010. (Compl., p. 8, ¶ 10; Compl., p. 11, ¶ 38). As noted *supra*, the alleged "harassing actions" were purportedly based on Fortes' race (*see* Compl., pp. 8-10; ¶¶ 8-33) and alleged disability (Compl., p. 12, ¶3 49-50). She received her right-to-sue letter from the EEOC on July 20, 2012, and filed her Complaint on November 13, 2012.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant may file a motion to dismiss for insufficient service of process. Service of process is governed by Federal Rule of Civil Procedure 4(c)(1), which states that a summons and a copy of the complaint must be served together on all named parties.

Additionally, Federal Rule of Civil Procedure 12(b)(6), states that a defendant may file a motion to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the Court "accepts well-pleaded allegations and reasonable inferences as true, and construes the complaint in the light most favorable to the non-moving party." *Thompson v. Horsham Township*, 576 F.Supp.2d 681, 687 (E.D. Pa. 2008). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court ruled that a Plaintiff must assert more than labels and conclusions, and that a well-pleaded complaint must include facts that raise the right to relief above the "speculative level":

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations..., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)...(" [T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)....

*Id.* at 555-556. Moreover, the Court is not required to credit bald assertions or legal conclusions in a complaint. *Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F.Supp.2d 634, 640

(E.D. Pa. 2008).  The Court must dismiss the complaint if the plaintiff "does not plead all of the essential elements of his or her legal claim…." *Edgar v. Avaya, Inc.*, 503 F.3d 340, 349 (3d Cir. 2007).

## ARGUMENT

Even construing all of the facts contained in her Complaint in the light most favorable to Fortes, her Complaint must be dismissed pursuant to F.R.C.P. 12(b)(5) because she failed to serve the Complaint with a summons.  However, even if service was effectuated Fortes' Complaint must be dismissed with prejudice pursuant to F.R.C.P. 12(b)(6) because for all of the following reasons: she failed to timely file the Complaint in compliance with the applicable statute of limitations; and she did not exhaust her administrative remedies with respect to claims alleging discrimination on the basis of color, gender/sex, and age; and the School District is immune from defamation claims under the Political Subdivision Tort Claims Act (hereinafter "TCA"), 42 Pa.C.S. §§ 8541 *et seq.*

## I.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO F.R.C.P. 12(b)(5) BECAUSE SHE FAILED TO SERVE THE COMPLAINT UPON DEFENDANT IN VIOLATION OF F.R.C.P. 4(c)(1).

The Federal Rules of Civil Procedure describe the way by which a plaintiff initiates litigation and through which a United States District Court obtains personal jurisdiction a defendant.  The process begins with a plaintiff filing a complaint, F.R.C.P. 3, followed by the plaintiff obtaining a valid summons from the Clerk, F.R.C.P. 4(a)-(b), and then properly serving both the summons and complaint together on the defendant, F.R.C.P. 4(c).  With respect to service, Federal Rules of Civil Procedure 4 specifically requires that "[a] summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."  F.R.C.P. 4(c)(1).  However, in the instant matter, Fortes filed

her Complaint (*see* Compl.) on November 13, 2012, obtained a summons dated January 17, 2013, and attempted to serve the summons without the Complaint (*see* Ex. E).

Following these rules and effectuating proper service of the summons and complaint is not a discretionary or meaningless process. Rather, the Third Circuit has very clearly articulated that failing to follow the requirements of the rules of procedures can be fatal to a plaintiff's claim: "We further hold that a summons when properly issued is not effective in conferring personal jurisdiction upon a partnership or individual if it is not served in accordance with Rule 4 of the Federal Rules of Civil Procedure unless service has been effective waived." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 570 (3d Cir. 1996). The School District never waived service, nor was the School District provided a notice and request for waiver contemplated by F.R.C.P. 4(d)(1). Moreover, Fortes clearly did not intend to request a waiver because she actually attempted to make service, but failed to follow the rules in doing so. This is a clear and fairly straight forward process that Fortes failed to comply with. "[T]he summons and a copy of the complaint must be effectively and timely served upon the defendant." *Ayres*, 99 F.3d at 569.

Anticipating that Fortes may seek to be excused from these rules because she is proceeding *pro se*, it is important to note that the United States Supreme Court stated that is has "never suggested that the procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Courts may liberally construe a *pro se* plaintiff's pleadings, but the substantive law and the rules by which litigation proceeds apply equally to all litigants, whether *pro se* or not. *See Doud v City of Wilmington*, __ F.Supp.2d __, __ (D.Del. October 1, 2012) ("The Third Circuit has consistently abided by the Supreme Court's guidance on this matter,

dismissing *pro se* complaints when the plaintiff has failed to abide by the Federal Rules."); *Ayres*, 99 F.3d at 570.

On a more basic level, the summons itself clearly indicates that it is supposed to be attached to the Complaint. It the middle of the page, it states that the School District must serve Fortes with either an answer or a motion pursuant to F.R.C.P. 12 in response to "the attached complaint." (*See* ). Fortes, a School District teacher who possess a Masters degree (see IFP App., p. 5), could simply read the document she was supposed to be serving and would have readily observed that she should have attached her Complaint.

The proper response for the Fortes' failure to comply with F.R.C.P. 4 is the filing of a Motion to Dismiss pursuant to F.R.C.P. 12(b)(5), which provides that the Court can dismiss the Complaint for insufficient service of process. Since Fortes failed to serve a copy of the Complaint with the summons in violation of F.R.C.P. 4(1), Defendants respectfully request that the Court enter an Order dismissing Fortes' Complaint.

## II.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED WITH PREJUDICE BECAUSE SHE FILED IT OUTSIDE OF THE TIME ALLOWED BY THE STATUTE OF LIMITATIONS.

It is well-established through scores of cases within the Third Circuit alone that any person who has filed an administrative complaint with the EEOC, receives what is known as a "right-to-sue" and wishes to pursue the litigation in U.S. District Court *must* file a complaint within 90 days of receipt of the right-to-sue letter. In the instant matter, Fortes received a right-to-sue letter from the EEOC on July 20, 2012, meaning that she was required to file her Complaint no later than October 18, 2012. However, she did not file her Complaint until November 13, 2012. As a result of failing to comply with the mandatory, 90-day statute of limitations, the Court must dismiss her Complaint in its entirety and with prejudice.

Title VII plainly states that, if the EEOC does not initiate litigation or otherwise resolve the allegations in a charge filed the EEOC within certain time constraints, the EEOC "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C.A. § 2000e-5(f)(1).  As discussed at length *infra*, the ninety day requirement functions as a statute of limitations that is consistently applied by the courts to untimely claims.  However, since Fortes filed an IFP application on October 18, 2012, (*see* IFP App.) instead of her Complaint and is now proceeding *pro se*, is it reasonable to anticipate that she is going to argue that she complied with the filing requirements and, in some form or another, is entitled to an equitable tolling of the statute of limitations.  Unfortunately, under the well developed and long established principals in this area, her argument fails as a matter of law.

As a threshold matter and as noted *supra*, litigation is initiated by the filing of a complaint.  F.R.C.P. 3.  Although a complaint is not normally deemed "filed" until the filing fee is received, if the plaintiff simultaneously files an IFP application with the complaint, then the requirements of F.R.C.P. 3 have been met.  *See Richardson v. Diagnostic Rehabilitation Center*, 836 F.Supp. 252, 254 (E.D.Pa. 1993). "Filing an *in forma pauperis* petition under 28 U.S.C. § 1915 with an accompanying complaint amounts to commencement of an action against those parties named in the complaint even though the complaint cannot technically be filed with the Clerk of Court until the court has granted plaintiff leave to proceed *in forma pauperis*."  *Mack v. Salarna*, 864 F.Supp, 865, 866 (E.D.Pa. 1988); *citing Paulk v. Department of Air Force*, 830 F.2d 79, 83 (7th Cir. 1987); *Move Organization v. City of Philadelphia*, 530 F.Supp. 764, 766 (E.D.Pa. 1982); *Krajci v. Provident Consumer Discount Co.*, 525 F.Supp. 145, 149 (E.D.Pa. 1981).

The salient point for Fortes is that the filing of the complaint – whether accompanied by an IFP application or not – is determinative of a timely lawsuit, and the filing of the IFP application by itself.  On that point, the Third Circuit has been quite clear: "[S]ubmitting an *in forma pauperis* complaint to the clerk does not result in commencement of the litigation and satisfaction of the statute of limitations." *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 458 (3d Cir. 1996).  Recognizing that there is oftentimes administrative delay in the processing of IFP applications, the Court has stated that formal filing, accomplished by payment of the fees or the Court granting an IFP application, would relate back to the date that the complaint was *actually submitted* to the Court.  *Id.* at 458, fn 8.  Stated another way, "[a]lthough a complaint is not formally filed until the filing fee is paid, we deem a complaint to be constructively filed **as of the date that the clerk received the complaint** - as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*." *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996) (emphasis added), *citing Rodgers ex rel. Jones v. Bowen*, 790 F.2d 1550, 1551-52 (11th Cir. 1986) (holding that a complaint is deemed "filed" for statute of limitations purposes when actually or constructively received by the court clerk-despite the untimely payment of the filing fee); *Knox v. Henderson*, 1999 WL 482382, * 1 (E.D.Pa. 1999) (the payment of the filing fee relates back to the date on which the complaint was actually received by the clerk).  *See generally Paulk v. Department of the Air Force, Chanute Air Force Base*, 830 F.2d 79 (7th Cir. 1987) (the *in forma pauperis* statute and F.R.C.P. 15(c) interact to allow an amendment to pleading to "related back " only if the pleading was timely and properly served).

In the instant matter, the Complaint was filed and the fee was paid on the same date: November 13, 2012.  Thus, the Complaint was both "actually" filed and "constructively" filed on

November 13, 2012 – or 26 days after the 90-day statute of limitations expired.  As recently as April 2012, while upholding dismissal of a *pro se* plaintiff's complaint asserting Title VII claims, the Third Circuit reiterated: "We have strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and must be dismissed."  *Thompson v. Brandywine School District*, 478 Fed.Appx. 718 (3d Cir. 2012), *citing Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

In light of the fact that Fortes paid the $350 filing fee and filed her Complaint after her IFP application was denied, it is reasonable to expect Fortes to argue for some other type of equitable relief.  However, any argument for equitable relief must fail under applicable standards. The U.S. Supreme Court squarely address the concept of equitable tolling in a case where a *pro se* plaintiff filed her right-to-sue letter from the EEOC with the district court on the last day before the statute of limitations expired.  The district court dismissed the lawsuit on the basis that the right-to-sue letter did not constitute a complaint under Federal Rules of Civil Procedure, but the circuit court reversed on the basis of equitable tolling.  *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984).  In brief, the U.S. Supreme Court agreed with and upheld the district court's ruling dismissing the complaint:

> This is not a case in which a claimant has received inadequate notice, ... or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon,... or where the court has led the plaintiff to believe that she had done everything required of her,.... Nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.
>
> * * *
>
> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980), "[i]n the long run,

15

experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Id.* at 151-52 (*internal citation omitted*).

There is no reason why Fortes, like the *pro se* plaintiff in *Baldwin*, is entitled to equitable relief. Fortes received adequate notice from the EEOC on July 20, 2012, (*see* Compl., p. 3, ¶ B). Her right-to-sue letter clearly states: "Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice or your right to sue based on this charge will be lost." (Compl., p. 6). Also although Fortes currently has a motion for the appointment of counsel dated October 12, 2012, pending before the Court, she filed it on November 13, 2012 – after the statute of limitations had already expired and contemporaneously with a 15 page Complaint. Further, there is no evidence anyone did anything to lull Fortes into believing that she had done everything necessary to file her Complaint. If anything, there is ample evidence that Fortes could read and understand the notices and form complaint, and understood how to calculate a 90-day deadline because that is the date on which she filed her IFP application. (*See* IFP App.).

*Baldwin* is also instructive in that it instructs that a right-to-sue notice by a pro se plaintiff is not enough to qualify as a "complaint" under the Federal Rules of Civil Procedure. *Baldwin*, 466 U.S. at 150 ("[W]e also find no satisfactory basis for giving Title VII actions a special status under the Rules of Civil Procedure".) To the extent that Fortes attempts to argue that any of the attachments filed with her IFP application on October 18, 2012, qualifies as a "complaint," clearly such is not the case. Federal Rule of Civil Procedure 8 requires, at a minimum, a short and plain statement of the court's jurisdiction, a short and plain statement of the claim, and a demand for relief. F.R.C.P. 8. Nothing in Fortes' October 20, 2012 filing even identifies the claims that she is now attempting to bring against the School District. Most importantly, Fortes

clearly knew the difference between a complaint and those other documents because they are all dated October 12, 2012, but she chose not to file the Complaint until November 13, 2012.

The Third Circuit's application of equitable tolling is that it has only been permitted in the most extraordinary of circumstances. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (Equitable tolling is appropriate only when the plaintiff has "in some extraordinary way…been prevented from asserting his or her rights.")  Based on Fortes' own conduct, she has not been prevented or precluded from making her way to the Courthouse.

Particularly illustrative is *Rockmore v. Harrisburg*, 2012 WL 4903045 (3d Cir. 2012).  In that case, a previously represented plaintiff was proceeding *pro se* with Title VII and PHRA claims because her attorney did not timely file her claims. *Id*. The Court found that the *pro se* plaintiff actually knew about the 90-day statute of limitations and received the right-to-sue notice from the EEOC, but did not do enough to protect her rights so equitable tolling was not appropriate. *Id.* at * 2.     Like the *pro se* plaintiff in *Rockmore*, Fortes received a letter from the EEOC that stated: "Your lawsuit must be filed WITHIN 90 DAYS of yoru receipt of this notice or your right to sue based on this charge will be lost." (Compl., p. 6).  Fortes obviously read the letter, because her IFP application was filed with the Court on the very last day of the statute of limitations period: October 18, 2012. (*See* IFP App.).

Thus, as there is no basis for any equitable relief, and because Fortes clearly did not timely file her Complaint, the Court must dismiss her Complaint in its entirety and with prejudice.

## III.   PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES WITH RESPECT TO FIVE OF HER TEN CLAIMS, WHICH MUST BE DISMISSED WITH PREJUDICE.

Litigants who bring claims pursuant to Title VII, or any of the laws that follow Title VII's statutory scheme, are required to exhaust the administrative process before they are

permitted to bring a claim in federal court.  Even if Fortes had timely filed her Complaint (which she did not), five of her apparent claims have never been previously filed with the EEOC or the PHRC, and must be dismissed for failure to exhaust administrative remedies.  As outlined *supra*, Fortes included the following claims her Complaint: she claimed discrimination in her employment on the basis of race (pursuant to Title VII and the PHRA); color (pursuant to Title VII and the PHRA); gender (pursuant to Title VII); sex (pursuant to the PHRA); disability (pursuant to the ADA and the PHRA); and age (pursuant to the ADEA and the PHRA).  However, her claims alleging discrimination on the basis of gender, sex, age and two claims on the basis of color are nowhere to be found in the PHRC Complaint attached to her Complaint. (*See* Compl., pp. 7-15).

Title VII specifies that "The [Equal Employment Opportunity] Commission is empowered...to prevent any person from engaging in any unlawful employment practice as set forth in...this title." 42 U.S.C. § 2000e-5(a).  Additionally, claimants also have the opportunity to file their charges with an appropriate state agency as well.  42 U.S.C. § 2000e-5(c).  The EEOC is responsible for investigating allegations and referring cases to the United States Attorney General for possible civil action.  42 U.S.C. § 2000e-5(f)(1).  If no action is taken by the EEOC regarding an individual's claim within 180 days of the individual's EEOC filing, the EEOC "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge..." *Id.*  In other words, "a plaintiff must comply with the procedures requirements of section 2000-e, including filing charge with the EEOC." *Pittman v. Night Foreman BOB*, 2012 WL 3580157, *4 (W.D.Pa. August 17, 2012); *citing Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413-14 (3d Cir. 2010).  Any lawsuit that follows the filing of the charge is limited to the scope of the charge.  *Id.*

The Third Circuit has noted that exhaustion of administrative remedies is absolutely required in Title VII cases:

> The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue. ... These preliminary steps are essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action. While preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion, ... the aggrieved person is not permitted to bypass the administrative process. Conciliation rather than formal court proceedings remains the preferred method of settling disputes.

*Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976) (internal citations omitted). *See also Angelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999) ("[I]t is a basic tenet of administrative law that a plaintiff should timely exhaust all administrative remedies before seeking judicial relief."). The outcome is not any different for *pro se* plaintiffs, and the Third Circuit has upheld dismissal of claims that *pro se* plaintiffs have attempted to bring in addition to timely claims. *See e.g. Thompson v. Brandywine School District,* 478 Fex.Appx. 718, 720 (3d Cir. April 18, 2012) (upholding district court's dismissal of half of the Title VII claims brought by a teacher proceeding *pro se* for failure to administratively exhaust those claims).

A number of civil rights laws, including the ADEA, follow the same statutory scheme as Title VII and, thus, have the same requirements regarding administrative exhaustion. Section 626 of the ADEA specifically states: "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d)(1). *See e.g. Miles v. Pennsylvania Dept. of Conservation and Natural Resources,* 2009 WL 506371 (M.D.Pa. 2009) (discussing how the ADEA has a comprehensive administrative available and administrative exhaustion is required in order to bring a claim in court); *Vance v. Whirlpool Corp.*, 707 F.2d

483, 486-89 (4th Cir. 1983) (dismissal of an ADEA claim was proper when plaintiff did not wait until 60 days after filing an administrative charge before bringing suit in federal court); *Waters v. Shoprite Supermarkets*, 2011 WL 6029248, *2 (D.N.J. 2011) ("It is well-established that an ADEA action  may ordinarily be brought only against a part previously named in an EEOC complaint.").

Similarly, claims brought under the PHRA also require administrative exhaustion. Applying the Title VII requirement of administrative exhaustion to ADA and PHRA claims, the Court in *Joseph v. Albertsons*, 2008 WL 294970 (D.N.J. 2008), ruled for the defendant on all claims that were based on acts after the plaintiff's EEOC filing.   *Joseph* involved alleged violations of the Americans with Disability Act, which specifically follows the same procedures as Title VII, and the PHRA. *See also Churchill v. Star Enterprises,* 183 F.3d 184, 190 (3d Cir. 1999) ("[B]oth the ADA and the PHRA require pursuit of administrative remedies before a plaintiff may file a complaint in court.  Thus, a party who brings an employment discrimination claim under Title I of the ADA must following the administrative procedures set forth in Title VII..."); *Black v. Southeastern Pennsylvania Transp. Authority*, 2006 WL 2711739 (E.D.Pa. 2006) ("Before filing suit, alleging a Title VII violation and a violation of the Pennsylvania Human Relations Act, the Plaintiff must present the claim in an administrative charge") (*internal citations omitted*).

Fortes' failure to exhaust administrative remedies with respect to allegations of discrimination on the basis of her age, sex/gender and color must be dismissed for failure to exhaust administrative remedies.

**IV.    PLAINTIFF'S CLAIM FOR DEFAMATION MUST BE DISMISSED WITH PREJUDICE BECAUSE IT IS PRECLUDED BY THE POLITICAL SUBDIVISION TORT CLAIMS ACT.**

Although not clearly stated in her Complaint, Fortes appears to be making a claim for defamation. (Compl., p. 3, ¶ E). It is unclear because there are absolutely no factual averments which are even remotely related to a defamation claim, such as identifying allegedly defamatory statements, who made them, to whom they were made, or how Fortes was allegedly damaged. To the extent Fortes is making such a claim, it must be dismissed with prejudice because the School District is immune from defamation claims pursuant to the Political Subdivision Tort Claims Act (hereinafter "TCA"), 42 Pa.C.S. §§ 8541.41 *et seq*.

The TCA provides that municipalities and their officials and employees are immune from tort liability: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Public school districts are local agencies and, therefore, public school districts and their employees are entitled to immunity under the Tort Claims Act. *See Petula v. Mellody*, 631 A.2d 762 (Pa. Cmwlth. 1993). Section 8541 "goes beyond merely clothing local governments with an immunity defense subject to waiver. It plainly forbids any damage recoveries against political subdivisions outside the parameters of the exceptions enumerated in Section 8542 of the Code." *City of Philadelphia v. Middleton*, 492 A.2d 763, 766 (Pa. Cmwlth. 1985).

In order to overcome this general rule of, a plaintiff must establish several factors as enumerated in the Tort Claims Act. The claim must be recoverable under a common law or statutory right of action, 42 Pa. C.S. § 8542(a)(1), and a plaintiff then must show that their injury was caused by the negligent acts of the School District falling within one of the eight

21

specific exceptions to immunity found in Section 8542(b). 42 Pa.C.S. § 8542(a)(2).[1] Defamation is not one of the specifically enumeration exceptions. The courts have strictly construed the requirement that the general grant of immunity found in the TCA bars recovery unless the plaintiff's cause of action falls within one of the above exceptions. *See Mascara v. Youth Study Center,* 523 A.2d 1118 (Pa. 1987); *E-Z Parks, Inc. v. Philadelphia Parking Authority,* 532 A.2d 1272 (Pa.Cmwlth. 1987).

Even if Fortes had made any factual averments with respect to defamation, is not within one of the eight exceptions to the TCA and, thus, any defamation claim must be dismissed with prejudice.

## CONCLUSION

For all of the aforementioned reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Respectfully Submitted,
LEVIN LEGAL GROUP, P.C.

Date:   February 20, 2013

Allison S. Petersen, Esquire
Amy R. Guerin, Esquire
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
Phone:  215-938-6378
Fax:    215-938-6375
apetersen@levinlegalgroup.com
aguerin@levinlegalgroup.com
*Counsel for Defendant*

---

[1] The eight exceptions to immunity found in Section 8542(b) are: (1) the operation of a motor vehicle in the possession or control of the local agency; (2) the care, custody or control of personal property of others in the possession of the local agency; (3) the care, custody or control of real property in the possession of the local agency; (4) a dangerous condition of trees, traffic signs, or other traffic controls; (5) a dangerous condition of utility service facility; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) the care, custody or control of certain animals. 42 Pa.C.S. § 8542(b) (1-8).

## CERTIFICATE OF SERVICE

I, Amy R. Guerin, Esquire, hereby certify that on this date I electronically filed the foregoing Defendant's Motion to Dismiss Plaintiff's Complaint and accompanying Memorandum of Law, and that the documents are available for viewing and downloading from the ECF system.   Additionally, a copy was mailed via First Class Mail to the following individual:

> Brenda Joyce Fortes
> 1133 Grandview Circle
> Pottstown, PA 19465-7725
> *Plaintiff*

Date:  February 20, 2013

_____
Amy R. Guerin