IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA FORTES, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 12-6063 |
| BOYERTOWN AREA SCHOOL | : | |
| DISTRICT, | : | |
| Defendant. | : | |

## M E M O R A N D U M

Stengel, J.                                                     July 18, 2014

  *Pro se* plaintiff Brenda Fortes brings this employment discrimination suit against her current employer Boyertown Area School District under Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and related state law. She claims Boyertown has discriminated against her based on race, color, gender, sex, age, and disability. Boyertown moves to dismiss her claims. For the reasons stated below, I will grant the motion in part and deny it in part.

## I.  BACKGROUND[1]

  Brenda Fortes is a sixty-five-year-old African American woman. Since the fall of 1993, she has worked as an English teacher at Boyertown High School. She was the first African-American teacher employed by the Boyertown School District in over a decade at her original time of hire and is one of two African-American teachers currently working for the School District.

---

[1] All factual allegations in this section are taken from the Complaint unless otherwise noted. See Compl., Doc. No. 3. The dates alleged are approximate.

### a.  Plaintiff's Disability

Ms. Fortes suffers from Post-Concussive Syndrome, which began in 2004 when she was injured breaking up a fight between two students. As a result of that incident, Ms. Fortes suffered injury to her head, neck, and hip and experienced trauma to her head. Her disability substantially limits her ability to maintain balance, causes dizzy spells and migraines, makes her sensitive to bright light, and make her anxious in large gatherings or crowded/cramped areas. Ms. Fortes filed a worker's compensation claim as a result of this injury. In August 2010, Ms. Fortes informed the defendant that she would need reasonable accommodations for her disability in the 2010-2011 school year.[2] Both her primary care doctor and her neurologist recommended that, among other things, the plaintiff be given a room with balanced artificial and natural light, allowed extended preparation time, and excused from non-essential large gatherings.[3]

### b.  Alleged Adverse Employment Actions Against Plaintiff

In June 2010, Ms. Fortes received a partial "Unsatisfactory evaluation." As a result, she was placed on a "Professional Improvement Plan" by Robert Scoboria, Assistant Superintendent of Administration for the defendant, and by Brett Cooper, Principal of Boyertown High School, in August 2010. The impetus for the plan was allegedly due to "a long history of inappropriate comments." Scoboria and Cooper, both white males, allegedly did not provide any specific examples of these allegations and

---

[2] See Letter from Dr. Angeline Gampico, Interim Assistant to the Superintendent for Human Resources for the defendant, Plaintiff's Response to Defendant's Motion to Dismiss, Doc. No. 22.

[3] See Note from Allan Weber, M.D., Advanced Neurologic Care Associates, P.C, dated Aug. 17, 2010 and note of Hermine Stein, D.O., Brookside Family practice & Pediatrics, dated Sept. 3, 2010, Plaintiff's Response to Motion to Dismiss, Doc. No. 22.

informed Ms. Fortes that the plan would be enforced and documented whether she signed it or not.

In September 2010, Scoboria and Cooper allegedly informed Ms. Fortes that she was not permitted to communicate with or contact the parents of her students. On October 7, 2010, Ms. Fortes intercepted a note being passed between two students, in which she was referred to as a "damn nigger." The students received a couple of days of in-school suspension. Ms. Fortes was not permitted to communicate with their parents about the incident.

On October 28, 2010, a student threw a marker, which struck Ms. Fortes' head. As a result, she was thrown off balance and had difficulty seeing. The student was subsequently removed from her classroom.[4] The following day, the student returned to Ms. Fortes' classroom and asked her if she was going to press charges. When Ms. Fortes responded, "Yes, most certainly," the student replied, "Fuck you, bitch [sic]" and stormed out of the room. The student received a one-day in-school suspension.

In addition, Ms. Fortes alleges that she was "regularly subjected to repeated criticism in regards to my performance and interaction with students and parents" and that she had made other complaints about aggressive students and the school's security, which the defendant failed to address.

In December 2010, the defendant presented Ms. Fortes with a "Transition and Separation and Release Agreement," requesting that she resign, release all claims, and

---

[4] It is unclear from the complaint whether the student was removed permanently or only for the day in question.

3

receive a private settlement. Ms. Fortes refused, saying that she had never requested a "settlement." Weeks before being presented with this agreement, she alleges that she had informed Cooper that she planned to work until age 67.

On January 24, 2011, Stephen Katch, Assistant to the Superintendent for Human Resources, informed Ms. Fortes that she was reassigned from her role as English teacher to the role of Library Research Coordinator. Ms. Fortes claims that this action was adverse because it was isolating and "demeaning," caused her to lose her classroom and be moved into a "cramped space without natural lighting and with constant large gatherings," and caused her to be "treated as if [she did] not exist." Ms. Fortes claims that this action was taken in retaliation for her not accepting the separation and release agreement and for her opposition to how the defendant handled students who were aggressive towards her.

### c.  Plaintiff's Employment Action

On March 16, 2011, Ms. Fortes filed dually a complaint with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Rights Commission (PHRC).Though it is not entirely clear from the complaint, it appears that Ms. Fortes is asserting race, color, gender/sex, disability, and age discrimination claims under Title VII, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the Pennsylvania Human Rights Act (PHRA). She also asserts what appears to be a claim for defamation. This is the second Title VII action

based on racial discrimination that the plaintiff has filed against the school district.[5] The

plaintiff received her right-to-sue letter on July 20, 2012.

On October 18, 2012, Ms. Fortes filed a petition to proceed *in forma pauperis*

(IFP) in this court.[6] I denied this petition on October 26, 2012.[7] In this denial, she was

instructed to file her complaint with the filing fee within thirty (30) days.[8] Ms. Fortes

then filed her complaint with her filing fee on November 13, 2012.[9] The complaint was

dated and signed on October 12, 2012.  At the same time, the plaintiff requested that

counsel be appointed.[10] On February 19, 2013, the summons was returned as being

executed on January 30, 2013.[11] On February 20, 2013, the defendant filed a motion to

dismiss under Rule 12(b)(5) and 12(b)(6).

On February 28, 2013, I granted the plaintiff's request for appointment of counsel

and directed the Clerk of Court to make her case available on the Civil Rights Panel.[12]

After eight months, no attorney had taken the case. On October 29, 2013, I ordered the

plaintiff to secure her own counsel or answer the defendant's motion to dismiss *pro se*

---

[5] In 2006, the plaintiff had also filed a Title VII action against the defendant, based on race discrimination. In that case, she claimed that her supervisor at the time referred to her as a "nigger" subliminally, along with other adverse actions taken against her. That case was settled by the parties in Ms. Fortes' favor. See Fortes v. Boyertown School Dist., et al., 06-cv-878-LS (E.D.Pa. 2006).

[6] Doc. No. 1.

[7] Doc. No. 2.

[8] Id.

[9] Doc. No. 3.

[10] Doc. No. 4.

[11] From the docket, it appears that the summons was not forwarded to Ms. Fortes until January 17, 2013.

[12] Doc. No. 10.

within thirty (30) days. On December 4, 2013, the plaintiff submitted a *pro se* answer in letter form.[13]

Ms. Fortes claims that white teachers and/or non-disabled teachers are treated more favorably than she because they are not subject to racial slurs, restrictions by the defendant in speaking to parents, nor were given a separation of employment agreement. She claims these actions detrimentally affected her because she was removed from her assignment as an English teacher and the harassment she experienced caused her physical and mental anguish.

The defendant moves to dismiss all claims under 12(b)(5) for insufficient service of process and 12(b)(6) for failure to state a claim.

## II.    STANDARD OF REVIEW

### a. Rule 12(b)(5)

Proper service of process is a pre-requisite to the court's personal jurisdiction over a defendant. Lampe v. Xouth, Inc., 952 F.2d 697, 700–01 (3d Cir.1991). Therefore, it must be decided at the onset of a case. Lampe, 952 F.2d at 701. In a motion to dismiss under Rule 12(b)(5), "the party asserting the validity of service bears the burden of proof on that issue." Grant Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). That party must do so by a preponderance of the evidence using affidavits, depositions, and oral testimony. State Farm Mut. Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg, 543 F.Supp.2d 424, 428 (E.D. Pa. 2008)(citation omitted).

---

[13] See Doc. No. 22.

### b. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[14] Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a

---

[14] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.

reasonable expectation that discovery will reveal evidence of" those elements. <u>Phillips v.</u> <u>Cnty. of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 556).

A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Brown v.</u> <u>Card Serv. Ctr.</u>, 464 F.3d 450, 456 (3d Cir. 2006)(quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

### c.  Plaintiff's *Pro Se* Status

In resolving motions pursuant to Rule 12(b)(6), courts must liberally construe *pro se* pleadings. <u>See, e.g.</u>, <u>Haines v. Kerner</u>, 404 U.S. 519, 520–521 (1972). Claims by *pro se* litigants may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>McDowell v. Delaware State Police</u>, 88 F.3d 188, 189 (3d Cir.1996)(quotations omitted).

### III.   PROCEDURAL DISCUSSION

### a.  Timeliness and Equitable Tolling

The defendant first argues that the plaintiff's action should be dismissed as time-barred. A person who files an administrative complaint with the EEOC has ninety days from the day the person receives her right-to-sue letter to file a civil action. 42 U.S.C. § 2000e-5(f)(1).[15] The 90–day period is typically strictly construed, so long as equitable

---

[15] <u>See, e.g.</u>, <u>Rockmore v. Harrisburg Prop. Serv.</u>, 501 Fed.Appx. 161, 164 (3d Cir. Oct. 17, 2012); <u>Richardson v.</u> <u>Diagnostic Rehab. Ctr.</u>, 836 F.Supp. 252, 253 (E.D.Pa. 1993)(citing <u>Mosel v. Hills Dep't Store, Inc.</u>, 789 F.2d 251, 252-53 (3d Cir.1986)).

tolling does not apply. See Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001)("We have strictly construed the 90–day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed.").

The defendant argues that the plaintiff's complaint should be dismissed because she did not commence her suit until after the 90–day deadline had passed. "A civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3. Ms. Fortes received her EEOC right-to-sue letter on July 20, 2012. She was required to file suit by October 18, 2012. Ms. Fortes' complaint was not filed until November 13, 2012.[16] However, she did file her *in forma pauperis* (IFP) application on October 18, 2012. She did not attach her complaint to the IFP application, as *pro se* litigants often do. She, instead, waited to hear whether her IFP petition was approved or denied. After she learned it was denied, she submitted her complaint with the filing fee within thirty days, as instructed by her IFP denial.[17]

When a plaintiff files an IFP petition with her complaint attached before the 90–day deadline, the complaint will be considered timely though it is not officially filed until the IFP petition is decided or the filing fee is paid, due to equitable tolling of the statute. See, e.g., Urrutia v. Harrisburg Cnty. Police Dep't, 91 F.3d 451, 453 (3d Cir. 1996). Although a complaint is not formally filed until the filing fee is paid, it is "constructively filed as of the date that the clerk received the complaint—as long as the plaintiff

---

[16] See Doc. No. 3.

[17] See Doc. No. 2 and 3.

ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*." <u>McDowell</u>, 88 F.3d at 191. It is not clear, however, whether the filing of the IFP petition, without the complaint, would also allow for equitable tolling. I have found no precedent that speaks directly to this point. Therefore, I will determine whether equitable tolling in appropriate in this case.

 "Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." <u>Seitzinger v. Reading Hosp. & Med. Ctr.</u>, 165 F.3d 236, 240 (3d Cir. 1999)(citations omitted). "Equitable tolling is generally appropriate in Title VII cases only when the defendant has actively misled the plaintiff; when the plaintiff 'in some extraordinary way' was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum." <u>Carter v. Keystone</u>, 360 Fed.Appx. 271, 273 (3d Cir. Jan. 13, 2010)(quoting <u>Seitzinger</u>, 165 F.3d at 240) (quotation marks omitted)).

In determining whether tolling is appropriate, a court must look at the diligence of the litigant, whether the litigant had actual or constructive notice of a filing requirement, and whether her lack of knowledge was reasonable. <u>Seitzinger</u>, 165 F.3d at 241. Equitable tolling is appropriate "only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." <u>Saleem v Hendricks</u>, 306 Fed.Appx. 739, 740 (3d Cir. Jan. 16, 2009)(quoting <u>Jones v. Morton</u>, 195 F.3d 153, 159 (3d Cir. 1999))(quotation marks omitted).

While it is true that the plaintiff's status as a *pro se* litigant should not excuse her non-compliance with procedures of the court, I believe equitable tolling is warranted in this case.[18] The application itself does not instruct the plaintiff to attach her complaint to the form.[19] It is unclear what, if anything, the Clerk of Court may have told Mr. Fortes when she submitted her form. While Ms. Fortes had notice that she needed to file her action before this deadline, she may not have been aware that her IFP petition did not officially commence her suit.[20]

It is reasonable for her to think that she should have to file her IFP petition and receive a decision on that petition before filing her complaint.[21] She is not a trained attorney. Her Post-Concussive Syndrome causes her to become confused, which is why she requested the assistance of an attorney from the Civil Rights Panel from the onset of her case. Furthermore, this was the process Ms. Fortes followed when she filed her previous discrimination action against her employer.[22] Given that she successfully filed

---

[18] See Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984)("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants…In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.")(citations and quotation marks omitted).

[19] See PAE AO 239 (10/09) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form), https://www.paed.uscourts.gov/documents/forms/ifpl.pdf.

[20] See Plaintiff's Response to the Motion to Dismiss, Doc. No. 22 at ¶ 1 ("Plaintiff filed in a timely manner, October 12, 2012, and requested court-appointed counsel.").

[21] Whether her IFP petition was approved or denied may have also helped her to decide whether she should file suit. If she did not have enough money to proceed, her denial may make her consider whether proceeding with the lawsuit was worth her time and money.

[22] See 06-cv-878, E.D.Pa.

suit in that action by first filing an IFP and then filing her complaint, it is reasonable for her to think she could do the same in this action.[23]

Ms. Fortes was diligent in filing her action. She submitted her IFP petition by the statutory deadline. She then filed her complaint with her filing fee within thirty days of receiving her IFP denial, per my Order.[24] Overall, she has complied with what guidance has been given her when she was instructed to do so.[25] In addition, there is no showing that Ms. Fortes' filing of the IFP motion was done in bad faith to extend the time to file her claim. See Richardson v. Diagnostic Rehabilitation Center, 836 F.Supp. 252, 255 (E.D.Pa. 1993). Her complaint was dated and signed on October 12, 2012. Why it was not filed then is unclear but does not appear to have been a delay tactic on the part of Ms. Fortes.

For these reasons, the 90–day deadline will be equitably tolled and Ms. Fortes' action will be considered timely.

---

[23] See id. at Doc. No. 1, 2, and 3. I will note that this is the only other civil action Ms. Fortes has filed in this court. She is not a frequent pro se litigant whose experience would have helped her more fully understand the Rules.

[24] It appears that any delay in filing her complaint after this denial was the result of Ms. Fortes' efforts to collect enough money to pay her filing fee. See Plaintiff's Response to the Motion to Dismiss, Doc. No. 22 at ¶ 1 (stating that the check was written on November 9, 2012 but did not clear until November 15, 2012).

[25] She also submitted an answer to the motion to dismiss before December 5, 2013, as I requested she do. See Doc. No. 14 and 22.

See, e.g., Baldwin Cnty. Welcome Ctr., 466 U.S. at 151(plaintiff's request for equitable tolling denied because she was told three times how to preserve her claim yet she did not act diligently); Rockmore, 501 Fed.Appx. at 163 (finding that equitable tolling was not warranted because the plaintiff "erred in allowing so much time to pass between the deadline and the date she filed her complaint").

### ii.     Service of Process

The defendant next argues that the complaint should be dismissed because it was not properly served. After a complaint is filed, a plaintiff must obtain a valid summons from the Clerk of Court. FED. R. CIV. P. 4(b).[26] Then, "[a] summons must be served with a copy of the complaint….within the time allowed by Rule 4(m)." FED. R. CIV. P. 4(c).[27]

The defendant indicates that the plaintiff attempted to serve the summons without her complaint.[28] The plaintiff agrees with this point but claims the fault lies not with her but with the Clerk of Court.[29] She claims that the Clerk never sent her a copy of her complaint to serve on the defendant.[30] She also claims that the summons she was sent was signed but had no seal, making it an invalid summons.[31] From the information presented by both parties, it appears that service of process was insufficient.

The defendant argues that Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 570 (3d Cir. 1996), requires the dismissal of the plaintiff's complaint for insufficient service. In Ayres, the Third Circuit held that "a summons when properly issued is not effective in

---

[26] "On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." FED. R. CIV. P. 4(b).

[27] The plaintiff has 120 days after the complaint is filed to serve the complaint and summons, unless good cause for extension of time is shown. FED. R. CIV. P. 4(m). The summons in this case was issued on November 13, 2012. It was served on the defendant on January 30, 2012, within the 120 day time period. Doc. No. 5.

[28] Defendant's Motion to Dismiss, Doc. No. 8 at 11. The defendant refers the court to Exhibit E as proof of this point. An Exhibit E was not attached to the defendant's memorandum, so it is unclear what exactly was served on the defendant. Id.

[29] Plaintiff's Response to the Motion to Dismiss, Doc. No. 22 at ¶¶ 2-9.

[30] Id. at ¶ 7.

[31] Id. at ¶ 5-6. The defendant has attached the summons that was served to its motion to dismiss; however, it is unclear from the exhibit when the summons was sealed as required. See Doc. No. 8, Ex. A.

conferring personal jurisdiction upon a partnership or individual if it is not served in accordance with Rule 4 of the Federal Rules of Civil Procedure unless service has been effectively waived." 99 F.3d 565, 570 (3d Cir. 1996). <u>Ayres</u> involved a *pro se* litigant who improperly served her complaint on the defendant because she failed to request the Clerk of Court to issue a signed summons with the seal of the court affixed. However, in that case, the *pro se* plaintiff was also a licensed attorney well aware of the service requirements. <u>Id.</u> at 566-67. Ms. Fortes does not have legal training and indicates she has been confused by the court's orders because of her disability.[32]

While it is true that the plaintiff's *pro se* status does not excuse her from complying with the Federal Rules, "[d]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." <u>Daoud v. City of Wilmington</u>, 894 F.Supp.2d 544, 551–52 (D. Del. 2012)(citations omitted). "Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." <u>Id.</u> at 552 (quoting <u>Umbenhauer v. Woog</u>, 969 F.2d 25, 30 (3d Cir.1992))(quotation marks omitted). If service was insufficient, the court "may afford plaintiff another opportunity to attempt service in the event any of plaintiff's claims survive the motion to dismiss." <u>Id.</u>

If Ms. Fortes' claims survive this motion to dismiss, I will quash the service and allow her another opportunity to serve her complaint on the defendant.

---

[32] Plaintiff's Response to the Motion to Dismiss, Doc. No. 22 at ¶¶ 11-12.

### iii.    Failure to Exhaust Administrative Remedies

The complaint alleges discrimination based on race (pursuant to Title VII and the PHRA), color (pursuant to Title VII and the PHRA), gender (pursuant to Title VII), sex (pursuant to Title VII), disability (pursuant to the ADA and PHRA), and age (pursuant to the ADEA and the PHRA). The defendant argues that the claims based on gender, sex, and two claims of color are not alleged in the PHRA complaint attached to the plaintiff's complaint. Therefore, they should be dismissed because the plaintiff has not exhausted her administrative remedies as to these claims.

Before bringing a lawsuit under Title VII, a plaintiff must comply with the procedural requirements stated in 42 U.S.C. §2000e–5. She must exhaust her administrative remedies by filing a discrimination charge with the EEOC and an appropriate state agency. 42 U.S.C. §2000e–5(a), (c). "The ensuing suit is limited to claims that are within the scope of the initial administrative charge." Barzanty v. Verizon Pa., Inc., et al., 361 Fed.Appx. 411, 413-14 (3d Cir. Jan. 20, 2010)(citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)). The scope of the lawsuit is defined by the scope of the EEOC charge. Id. A plaintiff won't be precluded from bringing a claim in the lawsuit which can reasonably be expected to grow out of the EEOC charge. Id. The PHRA and the ADEA also require a plaintiff to exhaust administrative remedies before filing a civil action.[33]

---

[33] See, e.g., 29 U.S.C. § 626(d)(1)(ADEA)("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."); Miles v. Pa. Dep't of Conservation & Natural Res., et al., No. 1:08–cv–1561, 2009 WL 506371, at *6 (M.D. Pa. Feb. 27, 2009)("The ADEA expressly states that 'when the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced ....'"); Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999)(explaining that the PHRA requires a plaintiff to pursue administrative

Ms. Fortes dually filed her PHRA complaint with the PHRC and the EEOC. The claims alleged in her PHRA complaint would define the claims she could bring in her civil action. In her PHRA complaint, she alleges one count of discrimination based on race, one count of discrimination based on disability, and one count of discrimination based on retaliation. She does not allege counts which relate to gender, sex, or age discrimination. These claims are unlikely to grow out of the claims asserted in the charge or the facts alleged.

I agree with the defendant that the plaintiff's gender, sex, and age discriminations claims should be dismissed under Title VII, PHRA, and the ADEA. They were not included in the PHRC complaint and reasonably could not have grown out of the plaintiff's race, disability, or retaliation claims. Therefore, they have not been administratively exhausted. See, e.g., Thompson v. Brandywine School Dist., 478 Fed. Appx. 718, 720 (3d Cir. Apr. 18, 2012)(upholding dismissal of Title VII claims brought by a teacher proceeding *pro se* for failure to administratively exhaust those claims).

Ms. Fortes' claims of discrimination based on color, however, could reasonably have grown out of the racial discrimination claim alleged in her PHRA complaint. Therefore, these claims should not be dismissed.

---

remedies before filing a complaint alleging employment discrimination in federal court); Black v. Se. Pa. Transp. Auth., No. 05-3411, 2006 WL 2711739, at *2 (E.D. Pa. Sept. 20, 2006)("Before filing suit, alleging a Title VII violation and a violation of the Pennsylvania Human Relations Act, the Plaintiff must present the claim in an administrative charge.").

# IV.    SUBSTANTIVE DISCUSSION OF REMAINING CLAIMS

The next question is whether the administratively exhausted claims survive a Rule 12(b)(6) challenge.

### a.    Title VII Race/Color – Discrimination

Title VII makes it unlawful for an employer to discriminate against an individual "with respect to his compensation, terms, conditions, or privileges of employment" based on the person's race, color, religion, sex, or ethnicity.  42 U.S.C. § 2000e-2.  The McDonnell Douglas burden shifting analysis applies. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). Mr. Fortes bears the initial burden of establishing a *prima facie* case of discrimination by preponderance of the evidence. Id. To establish a *prima facie* case under Title VII, a plaintiff must allege that: 1) she is a member of a protected class; 2) she is qualified for her position; 3) an adverse employment action was taken against her; and 4) that employer treated similarly situated persons from a different class more favorably, raising an inference of discrimination. Id.

If the plaintiff can establish a *prima facie* case, the burden then shifts to defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the defendant meets this burden, the plaintiff must then show by preponderance of the evidence that the employer's legitimate reasons for the adverse action were a pretext for discrimination. Id.

Mr. Fortes has established a *prima facie* case of racial discrimination under Title VII. She is a member of a protected class as an African-American. Viewing the facts in

the light favorable to her, she is qualified as an English teacher, with a Master's degree and over twenty years of teaching experience.[34]

Ms. Fortes alleges that she was subjected to several adverse actions as a result of the racial discrimination: 1) she was not allowed to communicate with the parents of her students; 2) she was offered a "Transition and Separation and Release Agreement" though she informed the defendant she planned to work for several more years before retiring; and 3) she was reassigned to the role of Library Research Coordinator after she refused to sign the agreement.[35] "'[A]n adverse employment action' under Title VII is an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey v. Burns Intern. Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004)(quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001))(citation omitted). Examples of adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices...unique to a particular situation." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)(citations and quotation marks omitted).

Viewing the facts presented in the light most favorable to Ms. Fortes, the actions by the defendant show a serious enough alteration in her workplace conditions, which

---

[34] See IFP petition, Doc No. 1 at 5; PHRA Compl., Doc. No. 3 at 2. Ms. Fortes also alleges that she received a partial "unsatisfactory" evaluation in June 2010 and then was placed on a Professional Improvement Plan in August 2010. See PHRA Compl., Doc. No. 3 at 2. While this information does call into question her ability to perform her job, I don't believe it is enough at the motion to dismiss stage to defeat the other facts she has provided.

[35] See id. at 2-3.

could be considered adverse.[36] The restriction on her communication with parents could be seen as a diminished material responsibility. The separate agreement could be viewed as an attempt at terminating her job. The reassignment from English teacher to Library Research Coordinator could be viewed as a change to a less distinguished title with less privileges and benefits.

Lastly, Ms. Fortes indicates that other white teachers were not restricted in speaking with parents, were not offered a separation agreement, and were not reassigned in their positions. She is one of two African-Americans employed by the School District. This information raises an inference of discrimination on the part of the defendant.

The plaintiff has established her *prima facie* case under Title VII. The defendant has not offered a legitimate reason for its actions.[37] The plaintiff has provided enough to overcome a motion to dismiss her race/color discrimination claims. The defendant's motion as to these claims is denied.

### b. ADA Disability – Discrimination

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring,

---

[36] Ms. Fortes also claims that she was "subjected to repeated criticism" and that calls to school security regarding aggressive students have gone unanswered. While these may be considered adverse employment actions, she fails to show that other white teachers were not subjected to these same conditions. See PHRA Compl, Doc. No. 3 at 3-4.

She also indicates that she was constantly subjected to harassment and racial slurs by her *students*. However, she points to only three incidents, two of which do not implicate her race or racial slurs. The students using racial slurs were disciplined by the defendant, but the plaintiff contends that the students were not disciplined enough. This information alone does not create an inference of discrimination on the part of the defendant school district in encouraging a hostile work environment. See Sarullo, 352 F.3d at 798 ("The 'central focus' of the *prima facie* case 'is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'")(citations and quotation marks omitted)).

[37] The defendant did not speak to the merits of this claim, instead arguing it should be dismissed for procedural reasons.

advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

> i. <u>Qualified Individual Under ADA</u>

As a threshold requirement, Ms. Fortes must satisfy the ADA's standard for a qualified individual with a disability in order to be protected under this statute. A "qualified individual with a disability" is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A person has a "disability" if she meets any of these three standards:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Whether an individual has a disability within the meaning of the ADA is an "extraordinarily fact-intensive" inquiry that must be conducted on an individual basis. <u>Emory v. Astrazeneca Pharm. LP.</u>, 401 F.3d 174, 181-82 (3d Cir. 2005). "[E]ven if two different plaintiffs alleging substantial limitations suffer from the same impairment, the nuance of its effect on their daily lives will invariably manifest themselves in distinct ways." <u>Id.</u> at 182. EEOC regulations do not list specific physical conditions that qualify but instruct that physical impairment means "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body

systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2 (h)(1).

Under this guidance, Ms. Fortes would be considered a "qualified individual" within the meaning of the ADA. She has been diagnosed with Post-Concussive Syndrome, which would be considered a physical impairment under the ADA since it affects her neurological system.[38] Her Post-Concussive Syndrome substantially limits her ability to perform common tasks. She needs extra time to comprehend information, has difficulty lifting and standing, and has difficulty seeing without natural light.[39] She also has a record of this diagnosis.[40]

## ii.   _Prima Facie_ Case of Discrimination

Given that Ms. Fortes would be considered "disabled" under the ADA, she must also show the following in order to establish a _prima facie_ case of discrimination based on disability: 1) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the School District; and 2) she has

---

[38] See Weisberg v. Riverside Twp. Bd. of Educ., 180 Fed.Appx. 357, 359 (3d Cir. May 11, 2006).

[39] The ADA does not define major life activity. EEOC regulations define this term to mean "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2 (i). The EEOC defines substantially limited as either being "[u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

To determine whether an individual is substantially limited, courts should consider the following factors: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. at (j)(2).

[40] See Doctors' Notes attached to Doc. No. 22. Ms. Fortes provides notes from both her family doctor and from a neurologist.

suffered an otherwise adverse employment decision as a result of discrimination based on her disability.  Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citations omitted).  "Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." Id.

The plaintiff has made out a *prima facie* case of discrimination under the ADA, enough to overcome a motion to dismiss. Her Post-Concussive Syndrome qualifies her as being disabled under the ADA. She has indicated that she is qualified to perform the essential functions of her job, holding a Master's degree and having over twenty years of teaching experience.[41]

Lastly, Ms. Fortes has shown that she was subjected to adverse employment decisions. Viewing the facts in the light most favorable to Ms. Fortes, these decisions plausibly could have been caused by discrimination based on her disability. Ms. Fortes received a note from her neurologist on August 17, 2010, outlining accommodations he recommended the school district provide her during the 2010-2011 school year.[42] She was then placed on a Professional Improvement Plan in August 2010.[43] In December

---

[41] See IFP petition, Doc No. 1 at 5; PHRA Compl., Doc. No. 3 at 2. Ms. Fortes also alleges that she received a partial "unsatisfactory" evaluation in June 2010 and then was placed on a Professional Improvement Plan in August 2010. See PHRA Compl., Doc. No. 3 at 2. While this information does call into question her ability to perform her essential job functions, I don't believe it is enough at the motion to dismiss stage to defeat the other facts she has provided. I recognize that other information may be provided later which shows that her unsatisfactory evaluations may not have been caused by discrimination. At this stage, I am required to view the facts in the light most favorable to her. The timing at this point is too coincidental.

[42] See Doc. No. 22, Letter from Dr. Allen Weber (neurologist) dated August 17, 2010.

[43] While it is unclear when the Improvement Plan was put into place, a letter from Dr. Angeline Gampico, Interim Assistant to the Superintendent for Human Resources for the defendant, indicates that the parties met on August 30,

2010, Mr. Fortes was offered a "Transition and Separation and Release Agreement" though the plaintiff told the district she planned to work for several more years before retiring.[44] After she did not agree to the settlement offer, she was reassigned from the English Department to the role of Library Research Coordinator.

In addition, Ms. Fortes alleges that she was subjected to conditions which she says do not meet the reasonable accommodations recommended by her doctor, while working as Library Research Coordinator.[45] Under the ADA, employers are required to provide "a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).[46] The defendant was aware of the plaintiff's condition and her request for reasonable accommodations.[47] The defendant has not

---

2010. See Doc. No. 22, Letter dated September 9, 2010 (attached).  At that meeting, the parties discussed Ms. Fortes' need for reasonable accommodations.

[44] See PHRA Compl., Doc. No. 3 at 6.

[45] She claims that the new position subjects her to little natural light and constant large gatherings. See PHRA Compl., Doc. No. 3 at 4-7. Her doctors recommended that she not be in crowded spaces and needs natural light. See Doc. No. 22, Attached Doctors Notes.

[46] The PHRA also imposes a duty to reasonably accommodate and the analysis of a reasonable accommodation is identical under the PHRA and the ADA.  Majtan v. Weck, No. 99-718, 2000 U.S. Dist. LEXIS 13817, at *15 n.5 (E.D. Pa. 2000).

[47] See Doc. No. 22, Letter from Gampico dated September 9, 2010. Furthermore, the defendant was on notice of Ms. Fortes' condition for several years, since her initial head injury happened at work and she filed a worker's compensation claim. See PHRA Compl., Doc. No. 3 at 5. An employer is obligated to initiate an interactive process with an employee in need of accommodation.  Coleman v. Keystone Freight Corp., 142 Fed. Appx. 83, 86 (3d Cir. 2005) (citing Conneen v. MBNA Am. Bank, 334 F.3d 318, 330 (3d Cir. 2003)).

offered anything to show that the accommodations requested by Ms. Fortes would impose an undue hardship.[48]

For these reasons, Ms. Fortes has stated a claim of discrimination based on disability under the ADA.

### c. PHRA Claims (Race, Color, and Disability) [49]

The PHRA provides that employers shall not discriminate on the basis of "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability." 43 P.S. § 955(a). Courts interpret the PHRA to be consistent with Title VII.[50] The *prima facie* case for employment discrimination necessary for an employment discrimination claim under the PHRA is the same as under Title VII and ADA.[51] The same reasoning that applies to the plaintiff's Title VII race/color discrimination claim and

---

[48] The defendant did not speak to the merits of this claim in its motion to dismiss.

[49] A school district is not necessarily an arm of the state to which sovereign immunity extends. See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 280-81 (1977)(explaining when a school district is considered an arm of the state). The Eleventh Amendment should not bar jurisdiction of this court hearing the PHRA claim against the defendant.  See, e.g. Kishel v. Valley View School Dist., No. 3:08–1585, 2010 WL 4537016 (M.D. Pa. Aug. 17, 2010); Smith v. Central Dauphin School Dist., 419 F.Supp.2d 639 (M.D. Pa. 2005); Schumacher v. Souderton Area School Dist., No. CIV. A. 99-1515, 2000 WL 72047 (E.D. Pa. Jan. 21, 2000).

[50] See, e.g., Weston v. Pennsylvania, 251 F.3d 420, 426 n. 3 (3d Cir. 2001)(explaining how Title VII and PHRA analysis are similar); Hussein v. UPMC Mercy Hosp., 466 Fed.Appx. 108, 111-12 (3d Cir. 2012).

[51] See, e.g. Fogleman v. Mercy Hosp., 283 F.3d 561, 567 (3d Cir. 2002); Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996).

The PHRA provides in relevant part: "It shall be an unlawful discriminatory practice, . . . (a) For any employer because of...non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 PA.C.S.A. § 955(a).  Since the PHRA definition of disability is substantially similar to the ADA definition, a district court should treat PHRA and ADA claims coextensively. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

her ADA claim would also apply to her race, color, and disability claims under the PHRA.

For this reason, I will not dismiss the plaintiff's race, color, and disability claims under the PHRA.

### d. Disability Discrimination—Retaliation

In her civil complaint, the plaintiff alleges that she was retaliated against because of her disability and filing of a worker's compensation claim. The ADA provides that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a).  The PHRA also prohibits retaliation.[52]

Ms. Fortes provides no facts which would support an ADA or PHRA retaliation claim. She does not provide a date of her worker's compensation filing to show that the retaliation was caused by her worker's compensation claim.[53] She did not submit a complaint alleging ADA violations until March 16, 2011, after all the adverse employment decisions she lists were made. She also does not indicate that she opposed

---

[52] 43 PA.C.S.A. § 955(d) (stating that is it unlawful for an employer to discriminate "against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge...under this act.").

[53] Given that she was initially injured in 2004, it would seem that she would have filed this worker's compensation claim long before the adverse employment actions she alleges. See PHRA Compl., Doc. No. 3 at 4.

any practice forbidden by the act before the adverse actions were taken.[54] Therefore, her retaliation claims will be dismissed.

### e. Title VII Retaliation – Discrimination

The plaintiff's federal complaint also claims "retaliation" based on "discrimination [and] disparate treatment."[55] I will construe this claim to be one brought under Title VII for racial discrimination. Her PHRA complaint alleges that she was retaliated against for filing two complaints of discrimination with the EEOC and PHRC in 1995, 2004, and 2006.[56]

In order to make out a *prima facie* case of retaliation under Title VII, a plaintiff must show that: 1) the employee or potential employee engaged in a protected employment activity; 2) the employer took an adverse employment action after or around the same time as the employee's protected activity; and 3) a causal link exists between the employee's protected activity and the employer's adverse action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

From the facts presented, Ms. Fortes did engage in a protected employment activity by filing EEOC complaints against her employer. She also alleges that on or about January 24, 2011, she was reassign\ned from her position as an English teacher to that of Library Research Coordinator. Though it is not entirely clear from the facts

---

[54] She claims she opposed other actions taken by the defendant in disciplining student actions. The defendant's actions in disciplining the students do not appear to have violated the ADA or PHRA from the facts provided. See PHRA Compl., Doc. No. 3 at 4-5.

[55] Compl., Doc. No. 3 at 3.

[56] Id., PHRA Compl. at ¶¶ 55-56.

whether this change in position was a demotion, this change could be considered to be adverse, viewing the facts in the light most favorable to Ms. Fortes.

Ms. Fortes, however, fails to establish a retaliation claim because she is unable to show that her filing her EEOC complaints in 1995, 2004, and 2006 was causally related to her change in position in 2011. Even construing the facts liberally and in the plaintiff's favor, it would still be a stretch to say that her change in position was retaliation for her filing the prior EEOC complaints five or more years earlier.

For this reason, her Title VII retaliation claim will be dismissed.

### f. Defamation

In her request for relief, Ms. Fortes asks that the defendant "publicly clear Plaintiff's name from the lies [and] other defamation of Plaintiff's character."[57] Though it's not entirely clear, this statement seems to be asserting a defamation claim. There are no other facts asserted that support a defamation claim. Given that I am required to liberally construe the plaintiff's *pro se* complaint, I will interpret it as a defamation claim.

The defendant argues that this claim should be dismissed with prejudice because the school district is immune from defamation claims under the Political Subdivision Tort Claims Act (TCA). The TCA states: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541.

---

[57] Compl., Doc. No. 3 at 5.

The TCA "forbids any damage recoveries against political subdivisions outside the parameters of the exceptions enumerated in Section 8542 of the Code."[58] The exceptions to immunity found in §8542 include: 1) the operation or a motor vehicle in the possession or control of the local agency; 2) the care, custody, or control of personal property of others in the possession of the local agency; 3) the care, custody, or control of real property in the possession of the local agency; 4) a dangerous conditions of trees, traffic signs, or other traffic controls; 5) a dangerous condition of a utility service facility; 6) a dangerous condition of streets; 7) a dangerous condition of sidewalks; and 8) the care, custody, or control of certain animals. 42 Pa.C.S.A. § 8542(b)(1-8).

I agree that the defendant is legally barred from bringing her defamation claim. School districts are considered local agencies entitled to governmental immunity under the TCA. Petula v. Mellody, 631 A.2d 762, 765 (Pa. Commw. Ct. 1993). "[A]n action in defamation falls within none of the eight enumerated exceptions." Id. I will dismiss the plaintiff's defamation claim because there is no legal basis by which it can proceed.[59]

## V.    CONCLUSION

For the foregoing reasons, I will grant the defendant's motion to dismiss as to the plaintiff's:

1) age discrimination claims under the ADEA and PHRA;

2) gender and sex discrimination claims under Title VII and the PHRA;

---

[58] City of Philadelphia, Police Dep't v. Gray, 633 A.2d 1090, 1093 (Pa. 1993)(citing positively City of Philadelphia v. Middleton, 492 A.2d 763, 765 (Pa. Commw. Ct. 1985)(Crumlish, P.J., dissenting)).

[59] In addition, Petula v. Mellody specifically held that school districts are immune from defamation suits. 631 A.2d 762, 765 (Pa. Commw. Ct. 1993).

    3)  retaliation claims under Title VII, ADA, and PHRA; and

    4)  defamation claim.

I will deny the defendant's motion to dismiss the plaintiff's:

    1)  race/color discrimination claims under Title VII and the PHRA; and

    2)  disability discrimination claims under the ADA and PHRA.

    I will allow Ms. Fortes to attempt to properly serve the defendant in accordance with Rule 4. However, if she is unable to properly serve of the summons and complaint as required by the Rules, dismissal of this case may be warranted.[60]

    An appropriate Order follows.

---

[60] See Carter v. Keystone, 278 Fed.Appx. 141, 142 (3d Cir. May 20, 2008)(affirming district court's decision that a *pro se* plaintiff who failed to attach the complaint to the summons was entitled to attempt service again but that his failure to attach the complaint the second time warranted a dismissal of the case).